**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JUNIOR COLLINS,**

                                **Plaintiff,**

    vs.                                                                                                  **9:10-cv-748
                                                                                     (MAD/RFT)**

**HEARING OFFICER BULLIS,**

                                **Defendants.**
_____

**APPEARANCES:**                                        **OF COUNSEL:**

**JUNIOR COLLINS**
99-A-4441
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13021
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**                  **JAMES SEAMAN, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants


**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On June 25, 2010, Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging that Defendants Bullis, Fischer, Simmons, and Snyder violated his constitutional rights while he was incarcerated at Upstate Correctional Facility ("Upstate"). *See* Dkt. No. 1. On October 29, 2010, Defendants Simmons, Snyder, and Fischer were terminated from the case. *See* Dkt. No. 23-13. The remaining Defendant, Hearing Officer Bullis, has now moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See* Dkt. No. 23-13.

Currently before the Court is Defendant's Motion for Summary Judgment. *See* Dkt. Nos. 23, 28.

## II. BACKGROUND

Plaintiff was an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Upstate at the time he submitted his Complaint. *See* Dkt. No. 23-13. He has since been transferred to Auburn Correctional Facility. The alleged events complained about occurred between January 27 and February 23, 2009. *See* Dkt. No. 28-2. On January 27, 2009, Plaintiff was selected for a random drug screening. *See id.* Prior to January 27, Plaintiff was subjected to other random drug screenings, five of which he failed. *See* Dkt. No. 23-12. Plaintiff was aware that he would be given three hours to provide a urine specimen. *See id.* It is undisputed that on January 27, 2009, Plaintiff was given three hours to submit a urine specimen and was unable to do so. *See* Dkt. No. 28-2. As a result, Plaintiff was issued a disciplinary ticket charging him with violating Prison Rules 106.10. *See id.* On January 28, 2009, Plaintiff was served with a copy of the misbehavior report. *See* Dkt. No. 28-4. That same day Plaintiff met with a hearing assistant and indicated he would like to request three witnesses: Officer Snyder, Officer Simmons, and Nurse Practitioner Parmer. *See* Dkt. No. 23-12. During his meeting with the hearing assistant, Plaintiff also requested various documents, which he received. *See* Dkt. No. 23-12 at ¶ 13.

Between February 10 and February 23, 2009, Defendant conducted a disciplinary hearing for Plaintiff regarding the January 27, 2009, disciplinary ticket. *See* Dkt. No. 28-2 at ¶ 13. On the first day of the hearing, Plaintiff restated that he wished to call three witnesses and gave his reasons for requesting them. *See id.* at ¶ 14. Furthermore, Plaintiff requested a copy of the video

tape from the holding pen area where the drug screening was conducted. *See id.* At that point, an extension was filed so the witnesses could be found and brought in for testimony. *See id.*

On February 19, 2009, the hearing resumed with the testimony of Officer Simmons. *See* Dkt. No. 23-2. Plaintiff was allowed to direct questions to Officer Simmons. *See* Dkt. No. 28-4. During Officer Simmons' testimony, he stated that inmates are allowed three hours to provide a urine specimen and that water is provided to each inmate every hour. *See id.* Furthermore, Officer Simmons stated that inmates are allowed to urinate when they are ready as long as the officer's partner is also available. *See* Dkt. No. 23-12. During his testimony, Officer Simmons did not remember Plaintiff asking to use the restroom or that he denied Plaintiff the opportunity to use the restroom because his partner was not available. *See id.* However, the video of the holding area does show that Plaintiff requested to use the restroom and was denied because Officer Simmons' partner was not available. *See* Dkt. No. 28-4. Finally, Officer Simmons stated that Plaintiff was given an opportunity to urinate at the end of his three hours and that Plaintiff stated he was not able to and therefore, Plaintiff was taken back to his cell. *See* Dkt. No. 23-12. Throughout questioning, Defendant Bullis prevented Plaintiff from asking several questions he considered to be arguments. *See* Dkt. 28-4. Plaintiff was directed to only ask questions involving the events surrounding the urinalysis. *See id.*

On that same day, Officer Simmons' testimony was interrupted by testimony of Nurse Practitioner Parmer. *See* Dkt. No. 28-4. While NP Parmer did testify that Plaintiff was receiving Flomax for his urinary problems, he could not provide specific information regarding Plaintiff's condition because he had not diagnosed him. *See* Dkt. No. 28-4. NP Parmer did state that Plaintiff first complained of urinary symptoms in January of 2008 and was treated with Flomax while at Five Points Correctional Facility ("Five Points"). *See* Dkt. No. 23-12. He also stated

3

that Plaintiff did not bring any medication with him when he was transferred to Upstate but started receiving Flomax again in early January 2009. *See id.* Furthermore, he stated that Plaintiff did not complain of any problems urinating while he was at Upstate. *See id.* Rather, Plaintiff stated that "once I'm taking my medication I have no problems to complain about." *See* Dkt. No. 28-4 at ¶ 52. Plaintiff, however, argued that because NP Parmer could not testify to Plaintiff's specific condition, Plaintiff was entitled to questioning the doctor who originally diagnosed him at Five Points. *See id.* Defendant, however, denied Plaintiff's request and stated that NP Parmer already testified to the information in Plaintiff's medical chart which stated Plaintiff was receiving his Flomax at the time of the urinalysis. *See id.*

Following the testimony of NP Parmer, testimony of Officer Simmons was resumed. *See* Dkt. No. 28-4. When this testimony commenced, however, Plaintiff again attempted to ask Officer Simmons questions that, according to Defendant, were "arguments." *See id.* When Plaintiff attempted to resume questioning, Defendant interrupted Plaintiff and Plaintiff responded by stating "[s]ir, you know, really, I'm a little scared of questioning the witness." *See id.* Following this statement Plaintiff made an objection to the filing of the extension of the hearing and the hearing was adjourned until the third witness was available for questioning. *See id.*

On February 24, 2009, the final witness, Officer Snyder, was brought in to testify. *See id.* When Plaintiff proceeded to ask Officer Snyder questions, he was not permitted to because Defendant stated that his questions were arguments and not questions directed to the events that took place during the urinalysis test. *See id.* Therefore, Defendant directed the questions. *See id.* Officer Snyder testified that, as far as he knew, Officer Simmons provided Plaintiff with water throughout the three hour waiting period and that Plaintiff was given an opportunity to provide a urine specimen at the end of the three hours and was unable to do so. *See* Dkt. No. 23-12.

4

Following the conclusion of testimony, Plaintiff and Defendant watched all relevant portions of the video of the holding area where the urinalysis took place. *See id.* According to Plaintiff the video and the testimony from Officer Snyder and Officer Simmons was contradictory. *See id.* Upon completion of the hearing on February 23, 2009, Defendant found Plaintiff guilty of having failed to provide a urine sample as part of a routine and random uranalysis. *See* Dkt. No. 30. Plaintiff believed that Defendant's finding of guilt was not warranted because of the contradictory testimony. *See* Dkt. No. 1. Plaintiff was sentenced to twelve months in SHU with three months deferred. *See* Dkt. No. 30. On March 19, 2009, Plaintiff filed an appeal of the Superintendent's Hearing. *See* Dkt. No. 1-2. On April 14, 2009, Plaintiff's appeal was reviewed and the decision was affirmed. *See* Dkt. No. 1-3.

In his Complaint filed June 25, 2010, Plaintiff argues that Officers Simmons, Snyder, Fischer, and Defendant Bullis violated his constitutional rights when he was issued a disciplinary ticket for failing to provide a urine specimen. *See* Dkt. No. 23-13. More specifically Plaintiff maintains that Defendant violated his Due Process rights because (1) Defendant was biased and partial and displayed open hostility towards him during his hearing; (2) Defendant denied his request to call a witness; and (3) Defendant placed him in SHU based on a false misbehavior report and false testimony. *See* Dkt. No. 1 at ¶ 14. Furthermore, Plaintiff claims that he had not taken his Flomax for four days prior to the urinalysis. *See* Dkt. No. 1. On October 29, 2010, Officers Simmons, Snyder, and Fischer were dismissed from the Complaint leaving only the due process claim against Defendant Bullis. *See id.*

On July 11, 2011, Plaintiff was deposed by James Seaman, the attorney for Defendant. *See* Dkt. No. 23-2. Mr. Seaman first gathered background information on Plaintiff and information surrounding the reason Plaintiff was transferred to Upstate. *See id.* Next Mr.

5

Seaman asked Plaintiff to describe what took place on the day of the urinalysis. *See id.* Finally, Mr. Seaman and Plaintiff went through the record in detail, first discussing the misbehavior report, then the assistant form, the transcripts from the hearing, the witness interview notice, the response to the witness request, the request for urinalysis test form, and lastly, the disposition of the hearing. *See id.* In Plaintiff's deposition he stated that he received all of the documents he had requested, that he was able to call all the witnesses he requested except for the doctor from Five Points, and that he reviewed the tape from the holding area with Defendant during his hearing. *See id.* Plaintiff also stated that Defendant did not give a reason for denying the requested witness from Five Points. *See* Dkt. No. 23-2.

On September 7, 2011, Defendant filed motion for summary judgment. *See* Dkt. No. 23-13. In the motion for summary judgment, Defendant argues that Plaintiff was provided all the due process required. *See id.* Furthermore, the motion for summary judgment argues that Defendant is entitled to qualified immunity. *See id.* On November 9, 2011, Plaintiff filed a declaration in reply to summary judgment. *See* Dkt. No. 28. In his reply, Plaintiff restated his claim that Defendant violated his due process rights during his disciplinary hearing. *See id.* Plaintiff went on further to describe the events that took place during the disciplinary hearing. *See id.* On November 30, 2011, Defendant filed a reply memorandum of law supporting his motion for summary judgment restating that Plaintiff did not provide evidence to show that his due process rights had been violated by Defendant.[1]

### III. DISCUSSION

**A.     Standard of review**

---

[1] The Court notes that Plaintiff filed a lawsuit similar to this one in the Western District of New York shortly before he filed this lawsuit. *See Collins v. Ferguson*, 804 F. Supp. 2d 134 (W.D.N.Y. 2011).

When reviewing a *pro se* case, the court "must view the submissions by a more lenient standard than that accorded to 'formal pleadings drafted by lawyers.'" *Govan v. Campbell*, 289 F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)) (other citations omitted). While *pro se* litigants are given more deference by the court, they must still provide competent evidence to support their claims to survive a motion for summary judgment. *See Lee v. Coughlin*, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)). Therefore, a *pro se* litigant, while still given some reasonable allowances, must follow the procedural requirements for summary judgment. *See Govan*, 289 F. Supp. at 295 (citing *Showers v. Eastmond*, 00 CIV. 3725, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001)). Furthermore, "a *pro se* party's 'bald assertions,' completely unsupported by evidence" will not be enough to survive a motion for summary judgment. *Lee*, 902 F. Supp. at 429 (citing *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991)).

Under Rule 56 of the Federal Rules of Civil Procedure, the movant has the burden through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [to] show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c)). Therefore, in order to grant a motion for summary judgment, the court must conclude as a matter of law that there is no genuine issue of material fact precluding judgment for the movant. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 36 (2d Cir. 1994).

When determining whether there is any genuine issue of material fact, the court must look at the facts in a light most favorable to the nonmoving party. *See id.* (citing *Anderson v. Liberty*

7

*Lobby, Inc.*, 477 U.S. 242, 255 106 S. Ct. 2505, 2513-14, 91 L. Ed. 2d 202 (1986)) (other citations omitted). Furthermore, a fact is "material" if a reasonable juror could find for the non-movant. *See Anderson*, 477 U.S. at 248. When the non-movant fails to refute or respond to the defendant's motion for summary judgment the movant must still establish that it is entitled to judgment as a matter of law. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003). Therefore, the evidence in the record supporting the movant's position must be sufficient to warrant the granting of summary judgment. *See id.* at 143.

**B.     Due process claim.**

In order to begin a due process analysis, the court must determine whether Plaintiff had a protected liberty interest in remaining free from the confinement that he challenges and then determine whether the defendant deprived the plaintiff of that liberty interest without due process. *See Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001); *Bedoya v. Coughlin*, 91 F.3d 349, 351 (2d Cir. 1996). In *Sandin v. Conner*, the Supreme Court held that although states may still create liberty interests protected by due process, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . , nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Thus, to show that a liberty interest is sufficient to invoke the protections of the Due Process Clause, a prisoner must establish both that his resulting confinement or restraint creates an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" and that the state has enacted a regulation or statute which grants inmates a protected liberty interest in remaining free from that confinement or restraint. *Id.*

at 484; *see also Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996). When determining whether a plaintiff possesses a liberty interest, district courts must examine the specific circumstances of confinement, including analysis of both the length and conditions of confinement. *See Sealey*, 197 F.3d at 586; *Arce v. Walker*, 139 F.3d 329, 335–36 (2d Cir. 1998).

In the present matter, Defendant has assumed for the purposes of this case that Plaintiff had a liberty interest in remaining free from a one-year period of confinement in the SHU. Thus, the question to be determined is whether Plaintiff was afforded the process he was due prior to his placement in the SHU.

Once it has been determined that an inmate does possess a liberty interest it must be determined if the inmate's due process rights were violated when that liberty interest was taken away. *See Wolff*, 418 U.S. at 564-67. It is well established that a plaintiff faced with more restrictive confinement than the general population is entitled to (1) written notice of the charges against him or her at least twenty-four hours before the disciplinary hearing; (2) the opportunity to obtain help from an assistant if the inmate is illiterate or otherwise unable to comprehend the case and charges against him or her; (3) written documentation of the evidence and reasons for disciplinary action; (4) an opportunity to present evidence and call witnesses; and (5) a fair and impartial hearing. *See id.* While an inmate does have a constitutional right to call witnesses, this right is not absolute. *See Eleby v. Selesky*, 682 F. Supp. 2d 289, 291 (W.D.N.Y. 2010). A hearing officer has the discretion to deny access to a requested witness when the calling of a witness may create an unnecessary risk, would be irrelevant, or redundant. *See id.* If a request is denied, however, the hearing "officer may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify . . . ." *Id.* (citing *Ponte v. Real*, 471 U.S. 491, 495 (1985)).

Furthermore, all that is required under due process to render a decision in a disciplinary

hearing is that "'some evidence' in the record support the disciplinary hearing officer's decision." *Holmes v. Fischer*, No. 09-CV-00829S, 2011 WL 32550, *12 (W.D.N.Y. Jan. 4, 2011). Therefore, only the small burden of "some evidence" in the record to support the conclusion need be reached by the hearing officer. *See id.* Moreover, an inmate has no constitutional right to be free from accusation in a false misbehavior report or false testimony by witnesses during a disciplinary hearing. *See Collins v. Ferguson*, 804 F. Supp. 2d 134, 138 (W.D.N.Y. 2011) (citing *Walpole v. Hil*, 472 U.S. 445, 455-56 (1985)). Furthermore, it is well established that failure to follow prison regulation, a DOCCS Directive, or state-law procedural requirements does not establish a due process claim because "[f]ederal constitutional standards rather than state law [or other regulations] define the requirements of procedural due process." *See Rivera v. Wohlrab*, 232 F. Supp. 2d 117, 123 (S.D.N.Y. 2002) (citing *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 (2d Cir. 1990)).

Here, Defendant argues that Plaintiff was provided the process due him during his disciplinary hearing. Plaintiff claims that Defendant violated his due process rights during his hearing because he was not allowed to call all the witnesses he requested, he was not allowed to ask all the questions he wanted of the witnesses he called, and Defendant found him guilty on testimony Plaintiff claimed was inconsistent.

Contrary to Plaintiff's assertions, Plaintiff was provided all the process to which he was entitled. First, on January 28, 2009, Plaintiff was given notice of the charges against him through a copy of his misbehavior report. The misbehavior report stated that Plaintiff refused to provide a urine sample during a random uranalysis on January 27, 2009, which resulted in the commencement of disciplinary action. *See* Dkt. No. 23-13. Second, following the receipt of the misbehavior report, Plaintiff was provided assistance in retrieving documents and witness

testimony. *See id.* Third, during his deposition Plaintiff stated that all documents he had requested from the assistant and the hearing officer had been provided to him, therefore, Plaintiff had written documentation of all the evidence against him. *See* Dkt. No. 28-17.

Fourth, Plaintiff was given the opportunity during his hearing to call witnesses and provide evidence on his behalf. Plaintiff claims he was not permitted to call the doctor that originally diagnosed him with prostate issues. Defendant, however, provided a legitimate reason as to why his request was denied. He stated that "NP Parmer testified with your [medical] chart here. . . . I'm going to deny that request for another medical person to testify." *See* Dkt. No. 28-4. Pamer stated in his testimony that Plaintiff was receiving Flomax at the time of the urinalysis. Therefore, if Plaintiff was taking his medication at the time of the urinalysis, testimony from his diagnosing doctor regarding his condition would not have been necessary. Plaintiff also stated that he did not experience problems urinating when he was taking Flomax. While Plaintiff does have a constitutional right to call witnesses, this right is not absolute and Defendant provided a legitimate reason for the denial.

Lastly, Plaintiff was provided a fair and impartial hearing. Based on the evidence and the testimony of the witnesses, Defendant concluded that Plaintiff failed to provide a urine sample in violation of prison rules. Although, Plaintiff claims that testimony relied on to make this decision was false, it is well established that an inmate does not have a constitutional right to be free of false accusations either in misbehavior reports or witness testimony. Furthermore, Plaintiff claims that the correctional officers administering the urinalysis violated procedural regulations. This argument also lacks merit because it is well established that violating procedural regulations does not amount to a constitutional violation.

All that is needed to render an inmate guilty during a disciplinary hearing is "some

11

evidence" establishing that the inmate had violated a prison rule.  Plaintiff had three hours to deliver a urine sample and failed to do so.  Plaintiff admits that while he was taking flomax he did not have problems urinating.  In his complaint, Plaintiff argues that Defendant did not allow him to mention he had used the bathroom right before he was taken from his cell and that he was not taking Flomax at the time of his urinalysis.  Contrary to his claims, Plaintiff could have presented his argument a the hearing but failed to do so.  *See* Dkt. No. 23-6 at 48-53.  Furthermore, Defendant asked Plaintiff to "tell me anything regarding the misbehavior report that you haven't already ...." and Plaintiff failed to mention that he used the bathroom before he was taken from his cell and that he had run out of Flomax.  *See* Dkt. No. 30.  Therefore, based on the evidence presented, Defendant could, and did, conclude that Plaintiff should have been able to provide a urine specimen and did not and, therefore, committed the violations with which he was charged.

Therefore, based on the record as a whole, Defendant did not violate Plaintiff's due process rights.  The testimony at the hearing from witnesses, information from Plaintiff, and Plaintiff's prior drug violations in prison, provided Defendant more than "some evidence" sufficient to determine that Plaintiff was guilty.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's Motion for Summary Judgment is **GRANTED**; and the Court further

**CERTIFIES** that, pursuant to 28 U.S.C. § 1915(a)(3), any appeal taken from this Memorandum-Decision and Order would not be taken in good faith; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: July 16, 2012
       Albany, New York

/s/ Mae A. D'Agostino
Mae A. D'Agostino
U.S. District Judge